I believe this case has been fully briefed and the Court is well aware of the facts and circumstances underlying the present action. I would only like to call to this Court's attention that the subject matter of the oil reserves off the coast of California has become an issue of national and worldwide importance in the present climate. And in that sense, my client's grandfather, Ambrose Gherini, was the original one acquiring Santa Cruz Island back in the 1860s. The geological evidence is conclusive that the channel or the area between the Channel is essentially one of the largest oil reservoirs in the world. I only emphasize this because the same matter as raised in this brief concern about the oil and the rights to it and the rights to it has been decided between the oil companies and the United States government in the Court of Claims in an action entitled AMBER. It's not finished yet, so I haven't raised it other than to inform you that a preliminary judgment in that case by that justice was to award the oil companies $1.3 million against the United States for termination of their drilling rights in this channel. Part of their drilling rights, we have alleged, encroach right upon the underlying mineral rights of my client's grandfather's ranch that is ascended accordingly to him. In addition, between the state of California, there's a great deal of litigation on the same subject matter, the LNG facilities, excuse me, on the West Coast. And now we are not contending that the government does not have the right to take that oil, not for one minute. We are contending if they're going to take it, they got to pay for it. That's as simple as it is. My client was no idiot. He processed and got a permit for drilling oil from Santa Barbara County Planning Commission. That went up on appeal. They fought it for 10 years. And under the former law, the appellate court in California held that this was not a taking. Well, of course, that law has been modified since then, and who knows what effect that has on that determination. Isn't the issue here whether your client is entitled to receive his share outside the trust? Is that the issue? Well, our position is that we're never in the trust properly. And that the trust, if there was one, was fraudulent from the word go. So that's really the issue involves whether your client is entitled to his share free and clear. No, no, we are not understanding that. Reverse then. The gist of the action is a RICO action, embezzlement, public embezzlement of the monetary value of the oil that has been taken from my client's ranch. That's the question. From whom has it been taken? It was taken from his parents originally. It was, there was an action in the United States District Court, a condemnation action, essentially. And we allege, specifically as relates to that action, that the attorneys, the judge and everyone else, there's 31 defendants names here, were engaged in a conspiracy to conceal the nature and extent of those oil reservoirs. And they did not reveal that in the district court action, whatever. Furthermore, the U.S. attorney was not aware, apparently, that Francis Guarini, my immediate ancestor, had defrauded his wife and the federal government and everybody in sight by creating a separate property trust, so he called it. But weren't, wasn't that issue, I'm sorry, wasn't that issue resolved in the California probate? Well, the short answer is no. Well, I mean, it was clearly posed. I mean, the validity of the 1990 trust, the validity of his, of Francis's wife's, Inez's, holographic will was squarely posed. In the probate court? The probate court resolved the issue adversely to your client, didn't it? If your question is addressed to the action of the probate court, I would answer it that the probate court in California and that proceeding has no risk to the collateral effect, whatever. Well, okay. So let's just start with the proposition that they, that that court resolved those two issues. I would say that they did not resolve those issues, Your Honor. They were, the resolution and the decree of the probate court in California was a determination one, that our petition to remove the trustee was denied. Second part of it was for an accounting. The judge ordered an accounting. In the process of the accounting, the, my client's sister, who was the trustee, came into court and the judge, they never got to that issue specifically. All that determined was that there was no surcharge available against her in the accounting. And the California statute expressly states that an action for surcharges as such in the probate court is not race judicata or collateral estoppel even in the California probate court, let alone it can't be necessarily against a federal RICO action. I don't think that the state of California has a jurisdiction to tell the federal courts what RICO means or, and I'm, I apologize for stating it this way, but we have alleged, Your Honor, in this case, the $20 million that came out of that federal case, trial, was misappropriated by the federal court itself. In that, my client died. And before the decree, the verdict had come in, but before there was a judgment pronounced, my client died. And they proceeded somehow, the attorneys for the trustee simply called up the fiscal department, apparently, of the, of the court and asked to have a wire transfer. Mind you, a wire transfer was sent to that attorney's trust account, which was done. No receipts, nothing in writing, no information anywhere in the record that the federal court was ever informed that the Francis Brady Sr. had died, and he, at the time that those funds were transferred, had pending on appeal his request for $750,000 of court fees and attorney fees. That's what the state of the affair is when he died. So far as I know, no one has ever presented to the federal court below, at any level, that he was dead at the time these funds were transferred. So I'm only emphasizing that in the sense that, yes, I've made some serious allegations in this complaint, from congressman on down. And I've alleged what the conspiracy is in detail, in the RICO action. There is no other remedy for this type of activity. They raise the defense of immunities. Immunities don't apply to public embezzlement, asked President Nixon and Clinton. They're not above the law. The courts are not above the law. And if my facts, as alleged, are taken as true, I submit I've clearly stated an action that deserves immediate attention. I should be allowed to proceed to trial, and let's have a factual determination of whether what I'm saying is correct or not. If race judicata is an issue, I submit I can't see that it is. But I would further add, as far as race judicata, there's no similar parties. The trustee in that action was in a dual capacity. She's also an heir. She's also alleged to have taken $250,000 to herself of the estate monies. All right. Thank you. All right. Thank you. May it please the Court, I'm Michael Gazzone, County of Santa Barbara, leading off for defendants below. The district court took judicial notice of the prior state court actions the plaintiff still seeks to re-litigate, but which would be forbidden de facto appeals in a district court. The district court, for example, quoted the state probate court's finding that plaintiff's share of his parents' estates was to remain in trust for the remainder of his life. Because plaintiff's share remains in trust, the California Probate Code provides for the California probate court's continuing in rem jurisdiction over those trusts. Page 12 of the district court's civil minutes tells us that this case is really about Plaintiff's desire to break loose his share and to take it out of the trusts that his parents established. This would be contrary to the state probate court's decision. As the district court correctly found at page 15 of its civil minutes, quote, Plaintiff cannot re-litigate the claims, claims he raised before the probate court, in this court, end quote. Through the district court's finding about re-litigating a state probate case, the district court got it right in 2005 when it dismissed this action for lack of subject matter jurisdiction. The district court would still be right today through that same re-litigation finding. Through the Ninth Circuit's 2004 holding in Wolf v. Strankman, this court of appeal may affirm the district court's dismissal on any ground supported by the record. Here the record supports dismissal of Plaintiff's re-litigation through the probate exception, through the Rooker-Feldman Doctrine, through the Anti-Injunction Act, and as in Wolf v. Strankman itself, because of improper defendants. Contrary to Plaintiff's assertion, Markham v. Allen does not tell district courts that they should provide a federal forum for the re-litigation of state probate cases. Markham v. Allen also does not overturn the Supreme Court's ruling in Princess Lita v. Thompson that district courts may not take on trust administration, including restoration of trust corpus. Unless the court has questions at this time, we'll segue to Assistant U.S. Attorney Sarah Robinson. Thank you, counsel. May it please the court, Assistant U.S. Attorney Sarah Robinson, on behalf of the federal appellees. Those include two former members of the United States House of Congress, House of Representatives, two former superintendents of the Channel Islands National Park, one former regional director of the National Park Service, a former NPS employee, the United States itself, four federal agencies, the United States District Court, a former fiscal clerk, and the trial attorney from the United States Department of Justice who tried the case in determining just compensation. Your Honors, the federal appellees filed their own motion to dismiss and raised the grounds below that I'm going to discuss in just a moment. And although the district court did not deal specifically with those grounds in its order, the motion to dismiss on behalf of the federal appellees was granted. It was not dismissed as moved. And so we look to the record to say that the district court therefore had grounds before him which were raised and briefed in opposition and in support on which to consider the basis to uphold the district court's determination dismissing the federal appellees. The federal appellees and their claims or their defenses can be divided into two basic categories. The federal agencies in the United States and the federal employees who are sued in their official capacities. As to those appellees, there are immunities, clearly immunities, which apply to shield them from suit. Two former members of the United States House of Representatives are shielded by legislative immunity. Any action, all actions in fact, discussed in the complaint that concern those two individuals deal with either the introduction of the bill to form the Channel Islands National Park and as to Representative, former Representative Seastrand, the bill which authorized the legislative taking of Mr. Guarini's share of the Guarini Ranch. So in addition to the legislative immunities that those two former House of Representatives members would be entitled of, there is of course the speech and debate clause of the United States Constitution which would shield their activities on the House floor including any actions taken in pursuit of their legislative goal of acquiring this land for the United States. Insofar as the federal employees sued in their official capacities, the United States itself and the federal agencies, there is no waiver of sovereign immunity on behalf of any of those persons or entities pursued under RICO. Moreover, the only tort alleged is intentional interference with an expectancy of inheritance and California does not recognize that tort. In order to bring an action under the Federal Tort Claims Act, the tort must come from recognized state law. If California has no such recognized tort, then the individuals cannot sue, then the individuals in their official capacities cannot be sued under the Federal Tort Claims Act. But even if there was such a tort, there's never been an allegation that a tort claim was ever filed and thus there is no proper condition proceeding satisfied for suit under the Tort Claims Act. Finally, Your Honors, on behalf of the federal employees sued in their individual capacities, if we say, well, is this then a Bivens case, because there is some allegation in the complaint that these individuals might be sued under Bivens for constitutional tort. No waiver by the United States for suit for constitutional torts. And a Bivens cause of action requires that the individuals who are alleged to have taken these acts take some individual act, specifically take some individual act to harm the interests of the plaintiff in this action, Mr. Guarini. There is no such allegation in the complaint. No individual act by any of these defendants linked to a damage specifically done to Mr. Guarini. Mr. Guarini's family admittedly thought there was oil for a long time before this case ever came to trial in the federal court. They tried to get a drilling permit. The Coastal Commission eventually put the nicks on that. And then all of these claims could have been raised in the trial for just compensation. They were not raised. There were no mineral rights asserted in the trial for just compensation. A federal jury determined that the proper just compensation for the taking of this land was more than $12 million. That result cannot now be disturbed under a Bivens claim. Even if it could, it's too late. A Bivens cause of action in the State of California must be brought within two years. The federal jury determined just compensation in 1999. This suit was brought down. Counsel, are you planning on giving time to a third? Yes, Your Honor. I think you better. I think I've raised my points, Your Honor. If there's no further questions, I'll gladly ask the Court to affirm below and turn it over to Ms. Murphy. Thank you. Good morning. May it please the Court, Molly Murphy, for the three state court judges who were sued, among the many defendants in this case. I just wanted to point out there were three judges sued, along with the other defendants, and the Eleventh Amendment operates as a jurisdictional bar. All of them were state court officials acting in their official capacity at the time. Thank you. Thank you. David Shea, on behalf of the trustee, Andrea Guerini. In light of Marshall v. Marshall, the probate exception, the federal probate exception, is alive and well. These matters have been litigated in state court, in the state probate court. What Mr. Guerini is attempting to do is to obtain his inheritance through these proceedings and to break the trust. In fact, Mr. Guerini is a lifetime beneficiary of this trust corpus with the remainder of this trust corpus to go to his children. Hence, from the moment that the trust is alive, it is an in rem proceeding in the state court. The internal affairs of the trust are a state court matter. A trust continues throughout a trust's lifetime until it is terminated or fully distributed. Hence, until that trust is fully distributed and no longer subject to the court's jurisdiction, that is only when the state court loses jurisdiction or is no longer necessary. So in light of Marshall v. Marshall, I believe that Marshall was very clear in allowing the state court to continue to exercise its in rem jurisdiction. These are daily, monthly, yearly issues. In fact, the California Probate Code specifically states that there's an annual requirement for an accounting. Hence, we would not be proceeding to the federal court for that annual accounting. And any other issues in the state court regarding the internal affairs, whether it's a trustee or left to the state court, Marshall has not disturbed that. That continues. Further, I just wanted to state that Probate Code Section 17-003, California Probate Code, specifically says that a trust in rem jurisdiction over the trustee, in rem jurisdiction over the beneficiaries. Thank you. You're out of time, but we'll give you a minute. I will take less than a minute, Your Honor, if it pleases the Court. Peter Garrow on behalf of Defendant Dean Ward. In addition to the reasons stated by my colleagues, Mr. Ward is a lawyer who was retained years after all of the events that took place occurred. He represented Mr. Greeney from July of 2001 to August of 2001 when Mr. Greeney retained Mr. McCarthy. Somehow, he's become enmeshed in this great big RICO conspiracy after it all occurred. And quite frankly, this is simply a time-barred claim from malpractice against Mr. Ward. Mr. Greeney did not like Mr. Ward's advice, which simply was, as stated in the complaint, you have no claims here. So somehow, all of a sudden, Mr. Ward is involved in this. As you will note from the operative first amended complaint, which brings us here today, Mr. Ward is not even mentioned until paragraph 49, which is found on page 39. He is simply an afterthought to this entire action. So in addition to the reasons stated by my colleagues, the lower court should be affirmed. If there are no further questions, I'd like to thank you for your time today. Thank you, counsel. The case that's argued will be submitted.
judges: B. Fletcher, Reinhardt, Rymer